## EXPRESS PUB. CO. v. HERRERA. (No. 6599.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 19, 1921. Rehearing Denied Nov. 16, 1921.)

1. Libel and slander &⟶21—Libelous article need not name person.

A publication is libelous although the name of the party against whom the libel is aimed is omitted, if he can be identified as the one to whom reference is made, and it is not necessary that all the world should know who the libeled person is; it being sufficient if it points out to his friends and acquaintances who is intended.

2. Libel and slander &⟶21—Publication held libelous though plaintiff was not properly named.

A publication containing false statements concerning "General Adolfo Herrera" was li-

belous as to Rodolfo Herrera, where the circumstances related in the article were of sufficient potency to cause those who knew Rodolfo Herrera to believe that he, and he only, was intended.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Rodolfo Herrera against the Express Publishing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Denman, Franklin & McGown, of San Antonio, for appellant.
Chambers, Watson & Johnson and Horace E. Wilson, all of San Antonio, for appellee.

FLY, C. J. Appellee sought a recovery against appellant, alleging that appellant had published a libel of him, through giving publicity to the following statement made in the San Antonio Evening News:

."Carranza's Slayer Made Bombs in City.

"Incidents Come to Light Here.

"Reveals Traits of Character.

Since the assassination of President Carranza by General Adolfo Herrera, two incidents which are said to reveal the character of the man have come to light in San Antonio.

"He is said by Department of Justice agent to have been one of the organizers of the 'Caballeros de Honor' or 'Gentlemen of Honor' a fraternal insurance organization with lodges among Mexicans in practically all border towns, which ran smoothly until Herrera, one of the principal 'Gentlemen of Honor', skipped with the funds of the organization.

"Then in popular lingo the 'Caballeros de Honor' went 'kerflooey.'

"In 1916 Herrera was a resident of San Antonio. With a tin can, gasoline, dynamite and gunpowder he manufactured what he called an aerial bomb, according to Department of Justice records, and offered it to General Funston for the United States Government.

"W. A. Wiseman, special agent of the department, says he invited General Funston to fly with him while he demonstrated the bomb.

"General Funston declined the invitation and refused to give the bomb a trial.

"Then Herrera tried to sell it to President Carranza.

"He was arrested on a charge of violation of neutrality, but the case never came to trial."

Appellee alleged that he was a man of good character and reputation when the publication was made, on May 28, 1920, and that while his name is Rodolfo Herrera and not Adolfo Herrera, as stated in the publication, yet appellee was identified by the incidents in his life given in the publication. He did not allege that he was a general or was named Adolfo or that he was a slayer of President Carranza, but admitted that he was one of the organizers of an insurance organization known as the "Caballero de Hon-

---

&⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

or," but had not skipped with the funds; that he had been a resident of San Antonio and had worked in a furniture store since 1906; that he invented a bomb which he tried to sell to the United States government and to the Mexican government; that he was arrested for violation of neutrality laws, but had not been tried, and that by Gen. Adolfo Herrera the newspaper referred to Rodolfo Herrera. The cause was tried before a jury on special issues, and upon the responses thereto judgment was rendered in favor of appellee for the sum of $600.

The facts show that appellee had lived in the city of San Antonio since 1906 and was employed during that time in a furniture store; that he was one of the organizers of the society known as the "Caballeros de Honor"; that he was the inventor of an aerial bomb which he endeavored to sell to the United States, and when he failed that he sought to sell it to Gen. Carranza. He had been indicted, but not tried, for a violation of neutrality laws. He was not a general, had not been in Mexico, and was not the slayer of Carranza. While it appeared from the city directory that those bearing the name of Herrera among the Mexicans are as numerous as are those bearing the name of Smith, Brown, or Jones among Americans, there was but one Adolfo among them, and it is not claimed that any of the descriptive matters apply to him except the name. Most of the descriptive allegations point with unerring hand to appellee. It is true that he was not a general; that he was named Rodolfo, and not Adolfo; that he had not slain Carranza, but he was one of the organizers of the fraternal insurance society; was a resident of San Antonio in 1916, and had offered to sell an aerial bomb manufactured by him to the United States government, and afterwards to Gen. Carranza, and that "he was indicted on a charge of violation of neutrality, but the case never came to trial." Friends of appellee swore that the publication identified appellee as being the subject of the charges therein.

[1, 2] The only defense in this case is that the libelous article contained a different given name from that of appellee, the only difference being in the first syllable of such name and that the identification of appellee was not such as to lead persons knowing him to recognize the fact that he was intended. A like defense was made by this appellant in the case of Express Co. v. Orsborn, 151 S. W. 574, and the defense was held not available. The publication could have been libelous if the name of the party against whom the libel was aimed had been omitted if he could be identified as the one to whom reference was made. It was not necessary that all the world should know who the libeled person was; it was sufficient if it pointed out to his friends and acquaintances who was intended. The evidence clearly shows that appellee's acquaintances knew that the circumstances narrated fitted him and no other. As said, in quaint language, by the English Lord Campbell, and quoted in section 294, p. 329, Newell on Slander and Libel:

"Whether a man is called by one name or whether he is called by another, or whether he is described by a pretended description of a class to which he is known to belong, if those who look on know well who is aimed at, the very same injury is inflicted, the very same thing is in fact done, as would be done if his name and Christian name were ten times repeated."

While all of the matters alleged did not fit appellee, a larger number of them did, and such circumstances were of sufficient potency to cause those who knew appellee to believe that he, and he only, was intended. Chapa v. Abernethy, 175 S. W. 166.

The judgment is affirmed.